# UNITED STATES DSTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **ELIZABETH WRIGHT,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CAUSE NO. 3:22-CV-357** |
| | § | |
| **ASI LLOYDS,** | § | |
| | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S REPLY IN SUPPORT OF OBJECTIONS TO DEFENDANT'S AMENDED BILL OF COSTS

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE JEFFREY V. BROWN:

Plaintiff Elizabeth Wright hereby respectfully submits this Plaintiff's Reply in Support of Objections to Defendant's Amended Bill of Costs.

Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
eric@dicklawfirm.com
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, TX 77092
(832) 207-2007 (office)

# TABLE OF AUTHORITIES

**CASES**

*Blum v. Stenson* 465 U.S. 886 (1984) ........................................ *4, 7, 11, 12, 14, 15, 38, 42*

*Childs v. State Farm Mut. Auto. Ins. Co. 29 F.3d 1018 (5th Cir. 1994)* ......................... 39

*Hensley v. Eckerhart 461 U.S. 424 (1983)* .......... *4, 7, 9, 10, 11, 14, 17, 18, 19, 21, 23, 42*

*Louisiana Power & Light Co. v. Kellstrom 50 F.3d 319 (5th Cir. 1995)* ........................ 16

*Miles v. Royal Indem. Co.589 S.W.2d 725 (Tex. Civ. App.—Corpus Christi 1979)* ....... 7

*Missouri v. Jenkins 491 U.S. 274 (1989)* ..........................................................24

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air 483 U.S. (1987)* ........7

*Perdue v. Kenny A. 559 U.S. 542 (2010)* ............................................. *7, 14, 42*

*Saizan v. Delta Concrete Prods. Co. 448 F.3d 795 (5th Cir. 2006)* ................................19

*Thomas v. Cap. Sec. Servs., Inc. 836 F.2d 866 (5th Cir. 1988) (en banc)* ……….*8, 35, 36*

*Walker v. U.S. Dep't of HUD 99 F.3d 761 (5th Cir. 1996)* ............................................ 19

*Whitehead v. Food Max of Miss., Inc. 332 F.3d 796 (5th Cir. 2003)*...... *8, 10, 35, 36, 37*

**STATUTES**

28 U.S.C. § 1821 ........................................................................................ 30

28 U.S.C. § 1911 ........................................................................................ 28

28 U.S.C. § 1912 ........................................................................................ 29

28 U.S.C. § 1920 .................................................................................... 30, 32

28 U.S.C. § 1927 ................................................................................ 5, 29, 30

Tex. Ins. Code § 554.002 ............................................................................ 7

**RULES**

Fed. R. Civ. P. 11 ...................................4, 10, 18, 28, 29, 30, 31, 33, 35, 36, 37, 38, 40, 42

Fed. R. Civ. P. 11(c)(4) ........................................................................... 8, 36

Fed. R. Civ. P. 54 ................................................................................ 8, 32, 34

Fed. R. Civ. P. 59(e) ...............................................................................3, 6, 28

## STATEMENT OF NATURE AND STAGE OF PROCEEDING

This is a first-party property insurance dispute in which Defendant ASI Lloyds sought sanctions against Plaintiff's counsel. The Court initially denied sanctions. *See* Dkt. 73, at 10. But on Aug. 5, 2025, the Court withdrew that denial and granted ASI's motion, ordering Plaintiff's counsel to pay the "fees, costs, and expenses reasonably and necessarily incurred" by ASI in defense of this suit, and directing ASI to file an amended bill of costs. *See* Dkt. 94 at 7-8 (Aug. 5, 2025).

Pursuant to that order, ASI filed an Amended Bill of Costs. *See* Amended Bill of Costs, ECF No. 95. Plaintiffs timely objected. *See* ECF No. 96; *see* also Ex. A, ECF No. 96-1. ASI responded and, for the first time, submitted the Affidavit of LaDonna G. Schexnyder in support of its request. *See* Dkt. 99, 99-1. Separately, on Sept. 2, 2025, Plaintiffs filed a Motion to Alter or Amend Judgment under Rule 59(e), which remains pending. *See* Dkt. 97.

This Reply is submitted in support of Plaintiffs' objections to ASI's Amended Bill of Costs. The issue now before the Court is the proper amount if any of a monetary sanction consistent with the Court's Aug. 5 order and applicable law, limited to fees and costs reasonably and necessarily incurred in defense of this suit. Plaintiffs contend ASI's submission exceeds that scope and is unsupported, and request that any sanction be sharply reduced.

# SUMMARY OF ARGUMENT

ASI's Amended Bill of Costs turns a narrow sanctions order into a sweeping, de-facto fee shift. The Court authorized only "fees, costs, and expenses reasonably and necessarily incurred in defense of this suit," yet ASI seeks virtually everything it billed, including prospective amounts and appellate work, far beyond the Order's scope.

Even as to work arguably within scope, ASI has not carried its burden under the lodestar framework. Its submission relied on unverified invoices and a belated, conclusory affidavit that offers no independent market-rate proof or itemized justification, contrary to *Hensley* and *Blum*. The record also reflects billing errors, an absence of demonstrated billing judgment, vague/redacted descriptions, duplicative staffing, and clerical tasks billed at legal rates—all of which require exclusion or substantial reduction.

Sanctions must be compensatory, causally tied to any sanctionable conduct, and "limited to what suffices to deter," not a windfall. ASI's all-expenses "but-for" theory conflicts with Rule 11 and Fifth Circuit guidance requiring the least severe sanction adequate to deter. A six-figure award would be punitive overreach, particularly given the legitimate coverage dispute reflected in the record, and is unnecessary to serve deterrence. If the Court imposes any monetary sanction, it should be modest; Plaintiffs submit that no more than $5,000 suffices

Accordingly, the Court should sustain Plaintiffs' objections in substantial part, disallow out-of-scope and unsupported items, and reduce any award to a minimal sum consistent with deterrence and the Court's August 5 Order.

## INTRODUCTION AND BACKGROUND

Defendant ASI Lloyds is attempting to turn a limited sanctions order into a windfall. The Court's August 5, 2025, Order withdrew the prior denial of sanctions and granted ASI's motion, but only ordered Plaintiff's counsel to pay the fees, costs, and expenses reasonably and necessarily incurred by ASI in defense of this suit. Dkt. 94 (Aug. 5, 2025) (ordering "Dick to pay the fees, costs, and expenses reasonably and necessarily incurred by ASI in defense of this suit"). The Court further directed ASI to file an amended bill of costs per that order. *Id.* at 8. The sanction was intended to cover only those expenditures ASI needed to defend this case as a result of Dick's alleged misconduct nothing more. Notably, the Order nowhere mentions attorneys' fees or appellate expenses. It did not invite ASI to recover every penny it spent from inception through appeal; it did not authorize a blank check. Yet ASI's Amended Bill of Costs overshoots that mandate by a wide margin. *See* Dkt. 95. ASI seeks to recoup virtually all fees and costs it ever incurred in this litigation (even prospective fees for future work), abusing the Court's sanctions order in an effort to obtain an unwarranted fee-shifting bonanza under the guise of "deterrence." Such overreach is not permitted by Fed. R. Civ. P. 11, 28 U.S.C. § 1927, or the Court's Order.

ASI's response to Dick's objections only underscores the fundamental defects in its fee request. *See* Dkt. 99; Aff. of LaDonna G. Schexnyder, Dkt. 99-1. The submission remains unsupported by competent evidence, grossly excessive, and beyond what sanctions law allows. Instead of narrowing its demand to the reasonable and necessary costs attributable to the sanctionable conduct, ASI essentially asks the Court to award every penny it billed, $166,222.98 (plus even more prospectively), as a punishment. ASI

misrepresents the scope of the sanction, treating it as a fee-shifting mechanism to make itself whole (or profitable) rather than a measured deterrent. For example, ASI includes appellate attorneys' fees and other expenses outside the "defense of this suit," even though those lie beyond the Order's scope and outside this Court's sanctioning authority. And rather than forthrightly address the specific billing objections Dick raised, ASI's response relies on conclusory assurances and self-serving reasoning. *See* Dkt. 96-1.

Moreover, ASI's handling of its fee request has been marked by carelessness and overreaching. In its original filing, ASI submitted nothing but unverified invoices hearsay documents, unaccompanied by any affidavit or testimony to authenticate them or attest to their reasonableness. Those invoices, as filed, even reflected glaring errors: for instance, some early entries showed an impossibly high hourly rate ($630.67) which ASI now claims was due to a "software glitch" in migrating billing records. ASI thus overstated its own fees on its sworn bill of costs. ASI only addressed these issues and supplied an affidavit after Dick objected, essentially conceding that its initial submission was deficient. This belated attempt to cure highlights the problems with ASI's proof. *See* Dkts. 99, 99-1. The pattern is clear: ASI overreached in its initial demand and backpedaled only when challenged, which demonstrates a lack of care in its fee submission.

As demonstrated in Dick's pending Motion to Alter or Amend Judgment, this case involved legitimate coverage disputes arising from actual property damage. *See* Pls.' Mot. to Alter or Amend J. Pursuant to Rule 59(e), Dkt. 97 (filed Sept. 2, 2025). Wright discovered catastrophic damage a "huge hole in the wall" with "sunlight like a spotlight coming through" along with extensive interior damage and rodent infestation. *Id.* at 2-3.

ASI's own documentation acknowledged that "demolition caused damage to your insured's property." Id. at 2. Under Texas's all-risk policy framework established in *Miles v. Royal Indem. Co.,* 589 S.W.2d 725, 731 (Tex. Civ. App.—Corpus Christi 1979), Wright "was not required to prove exactly what caused the [loss], only that the [loss] was of a fortuitous nature." Dick Law Firm's characterization of this physical damage as "vandalism" was proper legal advocacy, Wright needed only prove damage occurred, and the burden then shifted entirely to ASI to prove its exclusions clearly and unambiguously applied. *See* TEX. INS. CODE § 554.002. The Court initially denied sanctions, finding dismissal a sufficient remedy. *See* Dkt. 73, at 10. It later reversed course on remand. These facts underscore that this was not frivolous litigation but rather involved complex questions under Texas's all-risk insurance framework.

In sum, ASI's fee application fails to satisfy the requirements of law and equity. Under controlling precedent, fee awards (even as sanctions) must be proven reasonable and limited to what is necessary to deter the misconduct. The United States Supreme Court has set stringent standards for fee requests: *Hensley v. Eckerhart*, 461 U.S. 424, 440-441 (1983), demands detailed evidence of hours reasonably expended and excludes excessive or unnecessary work; *Blum v. Stenson*, 465 U.S. 886, 896 (1984), requires proof of prevailing market rates beyond the attorney's own say-so; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987), and later *Perdue v. Kenny A.*, 559 U.S. 542 (2010), emphasize that the lodestar figure (reasonable hours × reasonable rate) is presumptively the reasonable fee and should not be enhanced for routine factors fee awards should not become windfalls to attorneys. The Fifth Circuit likewise mandates that

sanctions be compensatory, not punitive, and limited to costs directly caused by the sanctionable conduct, using the least severe sanction adequate to deter similar conduct. See Fed. R. Civ. P. 11(c)(4) (sanction must be limited to what suffices to deter repetition of the conduct); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003) (en banc) (court must use the least severe sanction adequate to deter, and fees awarded must be causally linked to the sanctionable conduct); *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988) (en banc) (sanctions should be the minimum necessary to deter and courts should consider the offender's ability to pay and other factors). ASI's request flouts all of these principles. It offers no competent, independent evidence of reasonableness; it refuses to segregate sanctionable from non-sanctionable fees; and it seeks an amount that far exceeds what is needed to deter. For the reasons detailed below, Dick's objections should be sustained, ASI's fee demand should be sharply reduced, and if the Court determines any sanction is warranted, the amount should not exceed $5,000. That sum would be more than sufficient to achieve any deterrent purpose without granting ASI an unjustified windfall.

## ARGUMENT

### I. Asi's Fees Remain Unproven by Competent Evidence

ASI's first point contends that it was not required to submit an affidavit with its fee request and that it complied with the Court's order by filing an Amended Bill of Costs. This argument misses the mark. Regardless of the procedure the Court set for submission, ASI bears the burden of proving that its fees are reasonable and necessary, and it must do so with competent evidence. Simply attaching a stack of invoices without any supporting testimony or verification left ASI's claim fatally defective. Those invoices, standing alone, are inadmissible hearsay if offered to prove the truth of the fees charged, which is precisely their purpose here. Dick's initial objection correctly flagged this evidentiary gap.

ASI's belated cure was to file the Schexnyder Affidavit. Exhibit 1, Affidavit of LaDonna G. Schexnyder, Dkt. 99. only after Dick objected. Providing an affidavit after the fact only underscores that the original filing was deficient. Even now, Schexnyder's affidavit fails to supply the proof required under the lodestar standard. As discussed further in Section II, the affidavit is rife with conclusory statements (e.g., that "all the work... was reasonable and necessary") and lacks the independent, objective support that courts demand. The Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), made clear that a fee applicant "should submit evidence supporting the hours worked and rates claimed." Where documentation is inadequate, "the district court may reduce the award accordingly." *Id.* Here, ASI's original submission had no evidence beyond unverified billing records, and the new affidavit adds little of substance. *Hensley*, 461 U.S. at 433-34 (noting that "Counsel for the prevailing party should make a good-faith effort to exclude

from a fee request hours that are excessive, redundant, or otherwise unnecessary... 'In the private sector, billing judgment is an important component in fee setting. It is no less important here.'" (internal citation and quotation omitted)). *Hensley* thus requires fee applicants to exercise billing judgment and to support their claims with solid evidence.

Importantly, ASI's observation that "the Court did not order ... an affidavit" is no excuse for its failure of proof. Courts do not hand out fee awards on faith or say-so. The burden was on ASI from the outset to prove its fees with admissible evidence, whether by affidavit, live testimony, or detailed documentation. Its choice to file unsworn invoices was a tactical decision that carried the risk of a hearsay objection -- a risk that has now materialized. ASI cites no authority for the notion that a court's directive to file a bill of costs somehow suspends the rules of evidence or the requirements of the lodestar method. To the contrary, even in the sanctions context, the Fifth Circuit applies the lodestar framework and requires the movant to demonstrate that the fees were reasonably incurred as a result of the sanctionable conduct (i.e., that they wouldn't have been incurred but for the misconduct). See *Whitehead*, 332 F.3d at 802-03 (applying lodestar in Rule 11 context and limiting fees to those caused by the sanctionable filing). Even when fees are shifted as a sanction, the movant must prove the amount and causal connection with competent evidence. ASI's response does not deny that it bears this burden; it simply insists that its paperwork should be accepted as-is. That is incorrect.

Accordingly, Dick maintains his hearsay objection. The Court should not rely on unsworn billing records or ipse dixit assertions in awarding fees. If ASI wanted to recover over $160,000 in fees, it was incumbent on it to present a competent, sworn evidentiary

foundation at the time of its fee request. It did not. Even now, that foundation is shaky at best. The proper remedy is to deny or sharply reduce the fee award due to this failure of proof. At a minimum, the Court should view the Schexnyder affidavit with skepticism, scrutinizing its contents (or lack thereof) carefully, as discussed next.

## II. Schexnyder's Affidavit Is Conclusory And Inadequate Under Lodestar Standards

In an attempt to backfill its proof, ASI offers Ms. Schexnyder's affidavit to substantiate its fees and rates. Ex. 1, Dkt. 99-1. Line by line, however, this affidavit falls short of the requirements set by *Hensley*, *Blum*, and their progeny:

**Qualifications (Aff. ¶¶ 1–6):** Schexnyder establishes her identity, 20+ years of experience (since 2003), and familiarity with insurance litigation. Dick does not dispute her credentials. But an attorney's experience alone does not automatically justify a particular hourly rate or total fee. Under *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984), counsel must support their requested rate with evidence of prevailing market rates in the relevant community. Schexnyder's affidavit provides no such market data beyond her own say-so. Experience, without more, cannot carry ASI's burden to prove its rates are reasonable.

**Hourly Rates (Aff. ¶¶ 7–10):** Schexnyder recites the hourly rates her firm charged ASI over time: initially $240/hour for shareholders, $220 for associates, $90 for paralegals, later raised (in 2023) to $270 (shareholder), $250 (associate), $115 (paralegal). In ¶ 10, she then concludes these rates "are well within the range" charged by insurance defense lawyers in Texas (Houston area specifically). This conclusory assertion of reasonableness is precisely

what *Blum* deems insufficient. The Supreme Court requires satisfactory evidence, in addition to the attorney's own affidavits, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 896, n.11 (emphasis added). Schexnyder offers no evidence other than her own opinion. She cites no surveys, no affidavit from an independent Houston practitioner, no prior court decisions on prevailing rates nothing. Indeed, Schexnyder is based in Louisiana (her firm's address is Baton Rouge), and her affidavit does not demonstrate personal knowledge of Houston-market rates beyond a general familiarity. This falls short of *Blum*'s mandate. Simply put, ASI has not proven that $270/hour (or its other rates) reflect the market rate in Houston for this type of case. The affidavit's naked rate opinion thus fails the *Blum* test.

**Billing Judgment & Hours (Aff. ¶¶ 11–12):** In these paragraphs, Schexnyder describes her firm's billing practices: time is kept contemporaneously; she personally reviews time entries each month before invoicing; and ASI also reviews the bills and "will make revisions" if an entry is deemed excessive or unnecessary. Notably, however, Schexnyder does not identify a single instance in which any reduction or "write-off" was actually made in this case. She implies the bills were scrutinized, yet the record shows ASI paid the invoices in full as presented. (Indeed, ASI's response emphasizes that all invoices "have been paid by ASI" and suggests that if ASI paid them, they must be reasonable. We address that fallacy later.) What's missing is evidence of any billing judgment exercised by counsel before passing the bills to the client. The affidavit is silent on whether any hours were written off for inefficiency, duplication, or redundancy. In the Fifth Circuit, the failure

to show billing judgment is a serious flaw: if no billing judgment is evidenced, the court is required to reduce the fee to account for that failure. Here, ASI presents no proof that counsel cut any fat from their hours. The absence of any voluntary reductions strongly suggests that every hour was billed, no matter how excessive or minor. That is not the hallmark of a reasonable fee request.

**"Reasonableness" Conclusions (Aff. ¶¶ 13–16):** The remainder of the affidavit offers Schexnyder's broad-brush conclusions that all the work performed was reasonable and necessary, that the total fees incurred (over $162,000 through July 2025, now $166k+) were appropriate, and that certain expenses (expert fees, travel, etc.) were incurred due to Plaintiff counsel's conduct. These statements are self-serving and lack specific support. For example, ¶ 13 addresses Dick's objection about an apparent rate discrepancy in early invoices. Schexnyder attributes it to a software migration issue where older entries printed with incorrect rate figures, and she assures that ASI was actually charged the correct (lower) rates. ASI's claim of a "glitch" reveals that its initial fee submission to the Court contained errors, which ASI only addressed after being challenged. Such lack of care in the initial submission underscores why the Court should scrutinize ASI's numbers carefully. In any event, beyond addressing that issue, Schexnyder does not demonstrate why the hours expended were reasonable, she merely states they were. There is no item-by-item explanation, no discussion of why two lawyers were needed at certain junctures, no justification for large blocks of time on relatively routine tasks, etc. The affidavit provides no insight into how the hours were necessary. It essentially asks the Court to

accept that, because counsel worked those hours and ASI paid the bills, the time must have been reasonable. That is not evidence; it's circular logic.

In short, Schexnyder's affidavit is long on generalities and short on the kind of detail that the lodestar analysis requires. The Supreme Court's teachings are clear: fee-shifting is not a mere formality. The applicant must prove that the hours and rates are reasonable with specific evidence. *Hensley* demands accurate documentation and the exclusion of excessive hours; *Blum* demands market rate proof; *Delaware Valley* emphasizes that the lodestar is presumptively the reasonable fee (encompassing most relevant factors) and should not be enhanced for routine matters; *Perdue v. Kenny A.*, 559 U.S. 542, 1674-1675 (2010), reiterates that only exceptional circumstances justify any deviation from the lodestar, and even then such deviations require "specific evidence" and detailed findings (there is a "strong presumption" the lodestar is sufficient; enhancements are permitted only for factors not accounted for by the lodestar and supported by evidence). ASI's affidavit meets none of these standards. It provides no solid evidence of prevailing market rates, no evidence of prudent billing judgment, and no persuasive showing that the hours were all necessary. It is, at best, a perfunctory attempt to paper over the deficiencies in ASI's original filing.

Accordingly, the Court should give the affidavit little weight. Conclusory affidavits that "all hours were necessary and all rates are reasonable" carry little force in a lodestar analysis, especially when unaccompanied by contemporaneous evidence or third-party support. See *Hensley*, 461 U.S. at 433-34 (fee applicant's documentation must allow meaningful review; inadequate documentation warrants reduction); *Blum*, 465 U.S. at 896 n.11 ("the burden is on the fee applicant to produce satisfactory evidence" beyond their

own affidavit of the prevailing market rate). ASI chose to proceed without robust evidence; the consequence of that choice is that its fee request stands on a very weak foundation.

## III.    Asi Fails to Demonstrate That Its Hours and Rates Are Reasonable

ASI next contends that its counsel's hours and rates were reasonable, pointing to the affidavit's assurances and even to an unlikely source, Dick's own expert designation, as validation. These arguments do not withstand scrutiny.

### a.  Lack of Evidence of Prevailing Market Rates

ASI argues that the rates it paid its lawyers "are well within the range of typical rates for insurance lawyers in Texas and the Houston area." Ex. 1, Schexnyder Aff. ¶ 10, Dkt. 99.. This is the sum total of ASI's proof on market rates. As discussed above, that is not enough. Under *Blum*, ASI needed to provide independent evidence of the prevailing market rate in this community for similar services by lawyers of comparable skill and experience. *Blum*, 465 U.S. at 896, n.11. It did not. There are no affidavits from other practitioners, no market surveys, no data from fee awards in similar cases. In essence, ASI asks the Court to take Ms. Schexnyder's word for it that $270/hour for a partner (and $250 for an associate) is a reasonable Houston rate for this case. The Court should decline to do so. *Blum* squarely holds that an attorney's own affidavit is insufficient on prevailing rates. *Id*. Consequently, there is no competent evidence before the Court that $270/hour (or even $240, which was the initial rate) is the prevailing market rate in Houston for mid-level insurance defense work. In fact, common experience suggests those rates may exceed what is typical for a garden-variety first-party insurance case in this district, especially given that ASI's counsel are from a Baton Rouge-based firm, not a high-priced Houston boutique. But the Court

need not speculate; the point is that ASI has not carried its burden of proof on hourly rates. Without actual evidence, the Court cannot simply assume the rates are reasonable. The failure to substantiate the rates alone is grounds for a downward adjustment.

### b. Mischaracterization of Dick's Expert Evidence

ASI also asserts that the ~$162,800 it initially requested (now $166k+ with August 2025 fees) is "significantly lower than the average reasonable fee amount calculated by Dick" and "well within the range of reasonable fee awards according to Dick." *See* Dkt. 99 at 2 (citing Plaintiff's Designation of Expert Witnesses, Dkt. 16, at 12–13). ASI is referencing a disclosure in which Dick's own fee expert (for an unrelated issue) noted some average, low, and high figures for fees in insurance cases. This argument is misleading on multiple levels. First, any figures mentioned by Dick's expert were likely general statistics or hypotheticals, they were certainly not a concession that $162k is reasonable in this particular case. An "average" fee in a broad set of cases does not mean that every dollar up to that average is justified here. Second, an expert designation is not evidence. It simply outlines anticipated testimony; it is not an admission by Dick that ASI's fee request is proper. Most importantly, the determination of a reasonable fee is a case-specific inquiry. Even if (hypothetically) the average fee in similar cases was higher than $162k, the real question is: were the hours reasonably expended in this case, and were the rates reasonable for this market and this matter? ASI cannot escape that analysis by pointing to aggregate numbers from an expert disclosure. The Fifth Circuit has held that while comparisons to other cases can be a reference point, the court must scrutinize the particular hours and work done in the case before it. See *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324

(5th Cir. 1995) (emphasizing that a district court must review the documentation and determine the reasonable hours expended in the specific case, not just defer to benchmarks). Here, Dick has identified myriad instances of excess, inefficiency, and unnecessary work in ASI's billing. *See* Part IV, infra, and Exhibit A to Objections, Dkt. 96-1. ASI's reliance on an outside benchmark ignores those specifics. In short, Dick's expert's generalized observations do not rescue ASI's fee application from its evidentiary shortcomings. ASI must prove its fees were reasonable in this case, and that proof is lacking.

### c. Excessive Hours for Routine Tasks

Dick's Objection No. 7 detailed how ASI billed an inordinate amount of time on tasks that, by any objective measure, should have taken far less time. Dkt. 96 at 8. For example, drafting simple motions or routine filings. In response, ASI denies that any task was "routine," insisting that the Motion for Sanctions and other motions were not ordinary and that, because ASI prevailed on each of those motions, the time spent was justified. Dkt. 99 at 3. This reasoning is flawed. The complexity of the issues and the results obtained are factors to consider, but they do not give counsel carte blanche to expend unlimited hours. *Hensley* teaches that hours that are excessive or inefficient should be excluded regardless of outcome: a prevailing party is not automatically entitled to every hour billed. *Hensley*, 461 U.S. at 434 (court must exclude "excessive, redundant, or otherwise unnecessary" hours). Courts routinely reduce fee requests for overstaffing or over-briefing even when the movant ultimately succeeded, because success is not a license to bill excessively.

Here, ASI's success on its motions does not prove that every hour charged was necessary or reasonable. The Court should consider how much time a competent, efficiently-working counsel would reasonably need for those tasks. Dick's Exhibit A flags specific instances suggesting lack of efficiency e.g., excessive research or drafting time for relatively straightforward filings, multiple attorneys involved where one would suffice, etc. Dkt. 96-1. ASI's response offers no substantive rebuttal to these itemized examples; it simply reasserts that nothing was "routine." Yet, tellingly, ASI has elsewhere portrayed this case as simple (indeed frivolous) when arguing that Dick's claims had no merit. ASI cannot have it both ways. ASI cannot claim the case was so lacking in complexity that it warrants sanctions, but also so complex as to justify outsized fees. The far more plausible scenario is that ASI's counsel expended more hours than were reasonably necessary, perhaps out of caution or zeal, but those excess hours cannot be foisted upon Dick under Rule 11. The lodestar requires the Court to cut any "excessive, redundant, or otherwise unnecessary" hours from the fee. *Hensley*, 461 U.S. at 434. Dick has provided a detailed roadmap of where such cuts should occur. Exhibit A, Dkt. 96-1. ASI, for its part, has provided no counterevidence, no affidavit from another attorney attesting that the hours were reasonable, no documentation of any self-reduction for inefficiency. Therefore, the Court should find that ASI failed to demonstrate the overall reasonableness of the hours claimed. A substantial reduction for excessiveness is warranted.

In conclusion on this point, ASI has not met its burden of proving that either (a) the rates charged are in line with the market or (b) the hours expended were reasonable in amount. To the contrary, the record reveals unsupported rate assertions, clear signs of

overbilling, and a complete lack of evidence that counsel exercised billing judgment. Under controlling precedent, the appropriate response is to disallow or reduce those fees accordingly. See *Walker v. U.S. Dep't of HUD*, 99 F.3d 761, 770 (5th Cir. 1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (affirming reduction of fee due to lack of proof of billing judgment and noting the burden is on fee seekers to show they excluded excessive or duplicative billing). In practical terms, the Court should resolve any confusion or dispute about the correct hourly rate in Dick's favor e.g., use the lowest rate that was ever applied for a given timekeeper where there is ambiguity. And where tasks appear excessive or duplicative, the Court should substantially reduce or strike those hours. The burden was ASI's to substantiate its fee request; any ambiguity or doubt should be resolved against the fee applicant. See *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Simply put, ASI's "trust us" approach is not a legally sufficient basis to award tens of thousands of dollars.

## IV. ASI's Invoices Reveal Pervasive Overbilling Practices, Which Asi's Response Fails to Rebut

Dick's objections identified several categories of improper billing entries in ASI's invoices: (1) vague entries, (2) block-billed entries, (3) duplicative work by multiple attorneys, (4) clerical or administrative tasks billed at lawyer/paralegal rates, and (5) an overstated hourly rate issue. Instead of genuinely confronting these issues, ASI's response either dismisses them out of hand or offers excuses that do not hold up under scrutiny. We address each in turn:

### a. Vague or Block-Billed Entries (Objection to Vagueness -- Reply to ASI's Point "Third")

ASI's response to the vagueness objection is essentially to wave it off. ASI accuses Dick of having "copied and pasted" this argument from elsewhere and baldly asserts "there are no such entries here" despite Dick having pointed to specific examples. Dkt. 99 at 2-3. ASI even calls Dick's cited example, an entry billing 0.3 hours for "Analysis of Petition" "silly," claiming it's obvious that analyzing the petition was to prepare an answer. *Id.* This flippant dismissal does not square with the actual billing records or the law. The fact remains that numerous entries in ASI's invoices contain one- or two-word descriptions that make it impossible to ascertain what was done or why it was necessary. By way of illustration (not an exhaustive list):

- Entries labeled only "Analysis" or "Analysis of [file/claim]" with no further description of purpose or subject matter. *See*, e.g., Exhibit A, 9/06/2022 entry "Analysis of Petition" by C. Marcussen; 09/19/2022 entry "Analysis of claim file" by C. Marcussen, Dkt. 96-1. Such entries leave the Court guessing what analysis was performed, and whether it was necessary or duplicative.
- Multiple entries labeled just "Correspondence" or "Communicate with client" with no indication of the topic or recipient. *See* Exhibit A, Dkt. 96-1, entries on

09/06/2022, 09/13/2022 by L. Baccari; 06/01/2023 entry "Communicate with Plaintiff's counsel re: [blank]"; 01/05/2024 entry "Communicate with client" subject redacted, Dkt. 96-1. These tell us nothing about the nature of the communication. The invoices are rife with such vagueness.

- Numerous block-billed entries where multiple tasks are lumped together in a single time entry, obscuring how much time was spent on each task. For instance, an entry might read "Review file and prepare for hearing -- 4.0 hours" without delineating time for review versus preparation. Block billing hinders the Court's ability to evaluate reasonableness flags instances of block billing as well. Exhibit A, Dkt. 96-1.

Courts, including the Fifth Circuit, routinely disallow or reduce hours that are not adequately described. When entries like "analysis" or "correspondence" are used without detail, the fee applicant fails to meet its burden of documentation. See *Kellstrom*, 50 F.3d at 324 (upholding reduction for vague entries; documentation must be sufficient for the court to determine reasonableness); *Hensley*, 461 U.S. at 437 (fee applicant should maintain records in sufficient detail to allow meaningful review). Here, ASI's invoices have dozens of entries that fall below this standard.

ASI's only rejoinder is that any missing specifics are due to redactions for privilege. Dkt. 99 at 3 ("the subject of such correspondence is not 'missing' but, rather, redacted to protect. . . privileged communications"). That explanation is not persuasive. Privilege concerns can often be accommodated by providing a general description (e.g., "correspondence with client regarding discovery responses") without revealing substance. ASI cannot use privilege as a shield to prevent scrutiny of its fee request. If the descriptions are so redacted that one cannot tell what was done, then ASI has not met its burden to prove those fees are compensable. The Court could, at most, review unredacted records in camera, but ASI has not even proactively offered that here (it said it "can submit"

unredacted versions if requested, which tacitly admits the Court cannot tell what those entries are for now). The bottom line is that vague billing entries and block-billed entries frustrate any attempt to assess reasonableness. Therefore, all vague or inadequately described time identified in Exhibit A of Dkt. 96-1 should be excluded or substantially reduced. ASI's blanket denial that vagueness is a problem is contrary to the evidence and the law.

### b. Duplicative or Redundant Work (Reply to ASI's Point "Fourth")

Dick objected that some tasks were billed by two attorneys when one would suffice, classic duplication. For example, both Ms. Schexnyder and Ms. Marcussen each billed time to revise the initial disclosures on 11/28/2022 and 11/29/2022, resulting in a combined charge of about $378 for what should be a simple task. Ex. A, Dkt. 96-1 (entries at 11/28/22 and 11/29/22, marked as duplicative). Similarly, both attorneys billed for attending the same conferences or for reviewing the same documents in the file. In its response, ASI argues that because both Schexnyder and Marcussen were counsel of record, "each needed to be aware of what was happening" and had input on various actions, and that ASI and Schexnyder reviewed the bills and found them acceptable. Dkt. 99 at 2. This argument proves too much. While having multiple lawyers involved in a case is not per se unreasonable, the time for communications or overlapping work is not automatically billable in full. If one lawyer is capable of handling a task, having two lawyers both do it (or one lawyer double-check the other's work) is typically considered redundant overhead, absent specific justification. The Supreme Court and Fifth Circuit have made clear that redundant hours, multiple lawyers performing the same work, are not recoverable. *Hensley*

explicitly instructs courts to exclude "hours that are excessive, redundant, or otherwise unnecessary." 461 U.S. at 434. If one attorney's work would have sufficed, the hours of a second attorney on the same task are excessive.

ASI's response essentially says "we chose to use two lawyers and we paid for two, so it's reasonable." That is not the legal standard. The question is whether it was reasonably necessary to have both attorneys involved to the degree reflected in the billing. Often, duplication occurs for the firm's convenience or training, not out of necessity. Here, ASI offers no specific justification for why two attorneys needed to, say, both revise initial disclosures or both attend a routine scheduling conference. The mere fact that both were counsel of record does not mean both had to perform and bill each task. And ASI's point that it "paid the bills" is irrelevant a client might choose to pay for two lawyers out of caution or preference, but that doesn't mean the losing party (via sanctions or fee-shifting) should foot the bill for both. The fee-shifting standard is objective reasonableness, not whatever the client willingly paid. See *Hensley*, 461 U.S. at 434 (party seeking fees should exercise billing judgment as if billing their own client; hours not properly billed to one's own client are not properly billed to an adversary). If anything, ASI's willingness to pay for duplicative work reflects on ASI's litigation strategy, but doesn't prove necessity.

The specific examples itemized in Exhibit A should be disallowed in full as duplicative, or at least only one lawyer's time should be counted. Exhibit A, Dkt. 96-1. ASI's response did nothing to undermine Dick's showing that these are textbook instances of double billing. The fact that ASI reviewed and "did not adjust" the bills just indicates that ASI was fine paying them, but the Court's role is to ensure that Dick (via sanctions)

only pays for what was reasonably required to defend the case. Duplicative work fails that test. Therefore, Dick asks the Court to exclude redundant hours (e.g., where both attorneys charged for the same task) from the award.

### c. Clerical or Administrative Tasks Billed at Attorney/Paralegal Rates (Reply to ASI's Point "Fifth")

Dick also objected that ASI's billing included clerical or ministerial tasks, such as scheduling, organizing files, e-filing documents, preparing cover letters to the clerk, which were billed at paralegal or even attorney rates. *See* Objection No. 5, Doc. 96 at 6-7; Exhibit A, Dkt. 96-1. ASI's response is twofold: (1) it cites *Missouri v. Jenkins*, 491 U.S. 274 (1989), for the proposition that paralegals can perform tasks at lower rates that might otherwise be done by attorneys (thus saving money), and (2) it argues that even "clerical" work like preparing a civil cover sheet had to be reviewed by an attorney (Schexnyder) for accuracy, implying those charges are valid. Dkt. 99 at 3-4.

Dick fully agrees that using paralegals for substantive legal tasks (investigating facts, assisting with discovery, cite-checking, etc.) can be appropriate and efficient, that's the point *Jenkins* made. *Jenkins*, 491 U.S. at 288 n.10 (paralegals are often capable of carrying out tasks that otherwise would be done by lawyers, and billing such work at paralegal rates is permissible and encouraged to reduce costs). But *Jenkins* also drew a distinction: it cautioned that purely clerical or secretarial tasks should not be billed at a paralegal rate, as they are part of a law office's overhead. *Id.* In other words, tasks that do not require legal skill are not compensable in a fee award just because a paralegal or attorney performed them. They are built into office overhead.

Here, many entries identified in Exhibit A fall on the clerical side of that line. Dkt. 96-1. For instance, entries for "Download, organize, and Bates-label claim file materials" (done by a secretary), or "Finalize and electronically file correspondence to clerk," or preparing a cover letter to request a record. These are administrative tasks that a secretary or support staff can do. Charging even a $90/hour paralegal rate (let alone a higher attorney rate) for such work is not appropriate for shifting to the opposing party. ASI's response admits Schexnyder's review of a cover sheet is a clerical check (ensuring a form is correct). That might justify the firm billing a small fraction of attorney time to its own client as part of due diligence, but it doesn't make the time compensable in a fee award. Many courts disallow or reduce fees for time spent on clerical tasks like filing, organizing, calendaring, etc., even if done by paralegals. Those tasks are considered part of overhead or are subsumed in attorneys' rates.

ASI's invocation of *Jenkins* is therefore misplaced. *Jenkins* supports Dick's position: it approves billing paralegal substantive work at paralegal rates, but it emphasizes in footnote 10 that purely clerical work is not billable at a paralegal rate, and that its dollar value is not enhanced because a lawyer does it. 491 U.S. at 288 n.10. ASI's response does not contest that the identified tasks (Bates-labeling, downloading files, e-filing documents, etc.) are clerical; it just says "well, a lawyer had to review some of it." That does not transform the nature of the work. The proper approach is to exclude time spent on clerical tasks or, if minimal, treat it as non-billable. Accordingly, the fees for administrative tasks (as identified in Exhibit A, Dkt. 96-1, Category C) should be deducted in full or substantially reduced. There is no basis to force Dick to pay for ASI's office overhead.

### d. Overstated Hourly Rate and Billing Software Issue (Reply to ASI's Point "Sixth")

Dick's objections noted that some billing entries from 2022 appeared with an hourly rate of $630.67, an anomalously high figure not matching the stated rate structure. Dkt. 96 at 7. ASI's response explains that these entries were from older invoices imported into a new billing system, which "did not display the correct rates when printed." Exhibit 1, Schexnyder Aff. ¶ 13 & n.4; Dkt. 99 at 4. In other words, ASI admits the bills as originally presented to the Court contained errors -- the actual rates charged were supposedly lower ($240 or $270, presumably), and the high dollar amount shown was allegedly a system error. ASI asserts that the actual total is still within a reasonable range and that this has been corrected in the records.

Several points emerge from this. First, this incident underscores why careful scrutiny is necessary. ASI essentially submitted an erroneous fee claim in the Amended Bill of Costs, and only addressed the problem when confronted. The existence of billing errors supports the need for skepticism about ASI's figures. Second, even accepting ASI's explanation about the rates, the Court should be cautious in crediting the full amounts claimed given the initial errors and confusion. The Court should resolve any uncertainty by examining the actual billing records carefully and ensuring accuracy.

ASI's response downplays the issue ("the rates actually charged and paid by ASI are well within typical ranges"). But the burden was on ASI to get it right in its submission. The existence of errors suggests the documentation was not thoroughly checked before filing. In light of this, the Court should carefully verify ASI's numbers. Where there is any

ambiguity or discrepancy in the billing records, it should be resolved against ASI (the drafter of those records). This is consistent with the principle that ambiguities in a fee application are construed against the applicant, who is responsible for keeping accurate records.

In sum, none of ASI's retorts in Points 3–6 overcome the detailed objections Dick raised. The vague entries remain vague (and thus non-compensable due to inadequate description). The duplicative entries remain duplicative (and thus should be cut as unnecessary). The clerical tasks remain clerical (and thus not properly billed to an adversary). And the rate discrepancy, while ASI offers an explanation, remains a cautionary flag, underscoring that the Court should not simply accept ASI's calculations without careful verification. The Court should accordingly exclude or reduce the fees in all these categories, as outlined in Exhibit A of Dkt. 96-1. By doing so, the Court will ensure that any fee award is confined to work that was actually necessary and properly billed, consistent with lodestar standards.

## V.    ASI Seeks Expenses Beyond What Is Attributable To The Sanctionable Conduct

ASI's fee request is supposed to compensate it for "fees and costs reasonably and necessarily incurred ... in defense of this suit" as a result of Dick's alleged sanctionable conduct. Dkt. 94. Dick's objections noted that ASI was attempting to recover items that were not caused by the sanctionable conduct or not recoverable as a matter of law, including appellate fees, certain expert fees, and what appeared to be overhead or unrelated expenses. In response, ASI doubles down, arguing essentially that "but for Dick's frivolous

conduct, none of these expenses would have been incurred," and thus everything --
including appeal costs and expert fees -- should be recoverable. Dkt. 99 at 4-5. ASI's
sweeping "but-for" causation theory is overly broad and legally unsupported. Sanctions
must be carefully calibrated to the wrongful conduct; they are not an all-expenses-paid
voucher for the prevailing party. We address specific categories in turn:

### a. Appellate Fees and Prospective Fees (Future Work)

ASI's Amended Bill of Costs (Dkt. 95) audaciously requested not only fees already
incurred, but an additional fees for responding to a post-judgment motion (Dick's Rule 59
motion) and fees for a potential future appeal by Dick. Dick objected that appellate fees
(and any fees for work not yet done) are outside the scope of the sanctionable conduct in
the district court and, in any event, cannot be awarded in advance. Objection No. 8, Dkt.
96. In response, ASI argues that "but for Dick's frivolous filings, ASI would not have had
to incur" the appellate expenses, and it suggests the Court could award them under Rule 11
or even 28 U.S.C. § 1911. Dkt. 99 at 4.

This is legally incorrect. Rule 11 sanctions do not extend to appellate proceedings.
The Federal Rules provide a separate mechanism -- Rule 38, Fed. R. App. P. -- for an
appellate court to impose sanctions (damages and single or double costs) for frivolous
appeals. A district court's Rule 11 power is confined to sanctioning filings in that court.
Dick's decision to file a notice of appeal is outside the scope of the sanctionable conduct
that occurred in the district court. Indeed, ASI cites no case in which a district court
preemptively sanctioned a party for taking an appeal. ASI's citation to 28 U.S.C. § 1911 is
baffling. § 1911 deals with fees for the Supreme Court's treasury and generally with the

operation of federal courts; it provides no authority for a district court to award attorney's fees for appellate work. Perhaps ASI meant 28 U.S.C. § 1912 (which allows an appellate court to award damages and costs for frivolous appeals) or § 1927 (which allows sanctions for vexatious multiplication of proceedings), but none of those provisions authorize what ASI seeks here in this court. If ASI believes Dick's appeal was sanctionable, its recourse is to move in the Fifth Circuit (or seek damages under Rule 38 on appeal), not to ask this Court to impose appellate sanctions in advance.

Moreover, ASI's request for an added $15,000 for responding to Dick's Motion to Alter Judgment (Dkt. 97) is also improper. The Court can, in principle, award fees incurred in litigating the sanctions motion itself or defending the fee award (sometimes called "fees on fees"), but those too must be reasonable and actually incurred. ASI's $15,000 figure appears to be a speculative, round number estimate with no documentation; as of its filing on 9/4/2025, ASI had not even completed that work. Dkt. 99. The lodestar method does not permit the Court to award fees for work not yet performed or documented. The Court should disregard this speculative request for future fees. If and to the extent ASI later incurs reasonable fees in post-judgment or appellate proceedings and is entitled to them (which we dispute), that can be addressed at the appropriate time by the appropriate court. For now, the Court should categorically deny any sanction award for appellate attorney's fees or other prospective fees. Rule 11 is not an insurance policy against the other side's appeal.

Finally, it bears noting that even when courts do consider "fees on fees" (fees incurred in securing a fee award), those are often not awarded or are limited in sanctions cases, especially if the fee-seeker achieves only partial success. Here, given the many

problems with ASI's request and the likelihood that ASI will not recover anything close to what it asked for, the Court should decline to award any additional amount for litigating the fee dispute itself. In short, no appellate or prospective fees should be included in the sanction award.

### b. Expert Fees (Rimkus/Lorne Epson) and Related Expenses

Dick objected to ASI's inclusion to Rimkus Consulting (for expert Lorne Epson's report) in the sanctions bill, arguing that such cost was not caused by sanctionable conduct or, alternatively, is not recoverable as a "cost" in the usual sense. Objection No. 9, Doc. 96 at 9. ASI's response states that it hired Mr. Epson "because Dick, contrary to known or knowable facts, asserted the loss was caused by vandalism," implying that this expense is directly attributable to Dick's allegedly frivolous claim. Exhibit 1, Schexnyder Aff. ¶ 16, Dkt. 99 at 4-5. ASI further argues that the statute Dick cited (28 U.S.C. § 1821, which limits expert witness fees to a daily stipend for taxable costs) "provides no limit" on what the Court can award as a sanction.

It is true that in a Rule 11 or § 1927 sanctions setting, the Court is not strictly bound by § 1821's $40/day cap on expert witness fees -- that cap applies to taxable costs under 28 U.S.C. § 1920, not necessarily to a sanctions award. A court can, as a sanction, award reasonable expert fees if they were caused by sanctionable conduct. However, the Court's task is to award only those fees and expenses necessary to deter and punish the alleged sanctionable conduct. The question here is whether hiring the Rimkus expert was a necessary result of Dick's conduct.

As Dick's Motion to Alter demonstrates, Wright's complaint asserted vandalism as one possible characterization of the damage she discovered -- including the "huge hole in the wall" with sunlight streaming through. Dkt. 97 at 17-18. ASI itself acknowledged that "demolition caused damage to your insured's property." *Id.* at 26. If Dick's characterization of this damage as potential vandalism was colorable (as the Motion to Alter argues), ASI might have engaged the expert as part of its ordinary defense strategy to ensure victory on the merits, not because it was forced by sanctionable conduct. Typically, Rule 11 sanctions aim to compensate fees incurred in addressing frivolous claims or motions themselves. The expert report here was related to the merits of the insurance claim. The causal nexus required for sanctions is not established simply because ASI chose to hire an expert.

ASI's argument is essentially "Dick made a claim we say was frivolous, so we hired an expert to refute it—ergo, Dick should pay that cost." But the Court should scrutinize necessity. Given that Wright's damage was real and ASI acknowledged the demolition connection, was the expert's work actually necessitated by sanctionable conduct or part of normal defense? The Court has discretion here. Unless the Court finds that hiring the expert was a clear, direct result of sanctionable conduct (and not merely part of routine defense), it should exclude or limit the expert fee from the sanction award.

Finally, even if the Court finds the expert fee was caused by sanctionable conduct and thus in principle recoverable, the reasonableness of the amount should be considered. $4,320 might reflect a certain number of hours of work, is that reasonable for what was needed? ASI provided no detail, just the total. Without scrutiny, there's a risk of over-rewarding ASI. In any event, this item is a small fraction of the total, but it's emblematic

of ASI's approach: include every conceivable expenditure and justify it post hoc by "but for" reasoning. The Court should resist this approach and only allow those costs that truly stem from and were necessary to counter any sanctionable actions.

### c. "Overhead" and Miscellaneous Expenses (Travel, Court Fees, Research Charges)

Dick's Objection challenged items in ASI's cost request that appeared to be overhead or non-compensable, such as travel expenses, unexplained "court fees," and legal research charges. Doc. 96 at 9-10. ASI's response asserts that it is "not seeking to recover its or its counsel's overhead" and that all listed expenses were incurred specifically to defend the case. Exhibit 1, Schexnyder Aff. ¶ 16, Dkt. 99 at 5. ASI says the travel charges on the invoices were necessary (e.g., presumably travel to Galveston or to inspections), and that its counsel does not bill Westlaw charges (so any "research" item Dick thought he saw is moot). It also expresses confusion about what "court fees" Dick objects to, claiming that any court fees listed were actually incurred.

When this examined in detail:

**Travel Expenses:** Travel by counsel (mileage, hotel, meals, etc.) can sometimes be recovered in fee awards, but they are often viewed skeptically. If the travel was necessary for defending the case (e.g., attending hearings or inspections), a portion could be allowed. However, travel expenses are generally considered incident to litigation and not always shifted, especially if high. Moreover, if travel costs are also listed in a Bill of Costs (the separate mechanism under Rule 54 and § 1920), the Court must avoid double-counting. Here, Dkt. 95 is an "Amended Bill of Costs" but it mixes traditional taxable costs with

attorneys' fees (because of the sanction context). It's unclear if ASI also submitted a standard Bill of Costs for things like deposition transcripts, etc. The Court should ensure ASI isn't getting duplicate recovery (once as sanctions, once as taxable costs) for items like filing fees or travel.

Travel expenses should be scrutinized. For example, if ASI's Baton Rouge lawyers traveled to Galveston for a hearing, was it necessary to send two lawyers or one? Were those trips avoidable (some hearings maybe could have been by phone or handled by local counsel)? Also, under Rule 11's deterrence principle, the sanctioned party is not typically made to pay for luxuries in travel -- only reasonable costs. We urge the Court to allow at most the minimum necessary travel costs or disallow them if they appear excessive or not closely tied to sanctionable conduct.

**"Court Fees":** It's not entirely clear what "court fees" are referenced in ASI's invoices or bill. Possibly pro hac vice fees, or fees for certified copies, etc. Dick flagged it because it was unclear and might be something not chargeable. ASI says every court fee listed was actually incurred defending the case. If it's something like filing fee for removal or pro hac vice, those are typically taxable costs (or just costs a party bears). Since the Order only allows recovery of fees and costs related to defense, one could allow the initial filing fee or pro hac fee if those were expended. However, typically the prevailing party in federal court can recover filing fees and the like via a bill of costs to the Clerk. ASI's combined approach here risks mixing sanction fees with ordinary costs. To avoid confusion and overreach, the Court might want to handle taxable costs (filing fees, etc.) separately from the Rule 11 sanction. We simply caution that if ASI already recovered or could

recover a cost under the normal cost-shifting rules of Rule 54(d), the Court should not also award it as a sanction -- otherwise ASI double-recovers. In any event, Dick's point was to ensure ASI isn't slipping in routine costs that are not attributable to misconduct. If the Court is inclined to award such items, it should verify they were necessary and actually incurred.

**Research Charges:** ASI says its firm does not bill separately for Westlaw or Lexis usage, so it doesn't know what "research" charges Dick referred to. It's possible Dick misread an invoice entry. If indeed there are no separate research charges, then there's no issue. We just note that computerized legal research fees, if they were claimed, are often considered part of overhead (since firms factor those into billing rates) and not separately recoverable -- many courts disallow them as costs. So if any such charges exist, they should be cut. But taking ASI at its word, we'll assume this is moot.

In sum, with respect to "overhead"-type and miscellaneous expenses, we urge the Court to tread carefully. Sanctions are not meant to give ASI a better deal than it would have as an ordinary prevailing party. Some of these expenses (travel, filing fees) might have been recoverable in a normal cost bill (to a modest extent), but ASI chose to bundle everything into this sanction request. The Court should ensure that only expenses clearly identified and causally linked to any sanctionable conduct are awarded. Any doubt as to whether a given cost meets that standard should be resolved in Dick's favor, to avoid an overbroad sanction. This is in keeping with the principle that sanctions should be compensatory, not punitive: they should cover the costs directly resulting from the misconduct, but no more.

## VI.   Deterrence Does Not Require the Full Amount Asi Seeks. If Any Sanction Is Warranted, A Reduction Amount Would Be Sufficient

ASI's penultimate point responds to Dick's argument that ASI is effectively seeking an upward adjustment of its fee (a windfall) rather than a compensatory sanction. Objection No. 11, Dkt. 96 at 9. ASI denies that it sought any "lodestar enhancement" and claims it requested only the amounts it actually and necessarily spent. Dkt. 99 at 5. However, ASI simultaneously argues that such a full award is justified -- even if above what might normally be considered -- because it is needed to deter repetition of similar conduct (citing Rule 11's deterrence goal and the Fifth Circuit's en banc decision in *Whitehead v. Food Max*). In other words, ASI invokes the Rule 11(c)(4) principle that sanctions should be sufficient to deter misconduct, seemingly to argue that more is better when it comes to the sanction amount.

This is a dangerous argument, and one that the Court should reject. It is true that Rule 11's purpose is deterrence, and a sanction can, in an appropriate case, equal the full attorneys' fees incurred by the movant. But the Rule 11(c)(4) directive cuts both ways: it also cautions that the sanction should be limited to what suffices to deter. The Fifth Circuit has emphasized that courts must impose the minimum sanction necessary to deter the undesirable behavior. *Thomas v. Cap. Sec. Servs.*, 836 F.2d 866, 878 (5th Cir. 1988) (en banc) (sanctions should be calibrated to be effective but not excessive). The sanction should not go beyond what is needed for deterrence, because then it becomes punitive (or a windfall to the other party) which Rule 11 does not intend.

Here, ASI urges the maximum imaginable sanction—over $200,000 if one includes the future amounts—on the theory that Dick's conduct warrants maximum deterrence. But let's put this in perspective. As detailed in Dick's Motion to Alter (Dkt. 97), Wright discovered actual physical damage to her property, a "huge hole in the wall" with sunlight streaming through, and ASI itself acknowledged that "demolition caused damage to your insured's property." *Id.* at 17-18, 26. The Court initially denied sanctions, finding dismissal sufficient. Dkt. 73 at 10. ASI conducted a three-month investigation and participated in mediation, treating this as a legitimate coverage dispute. Under these circumstances, a six-figure award is exceedingly high. Such large sanctions are typically reserved for extreme, bad-faith litigation tactics that persist after warnings, for instance, cases of fraud on the court, repeated violations, or completely malicious conduct. There is no indication that Dick has a history of similar issues or that warnings were ignored. This appears to be a single case involving complex coverage questions.

If the Court determines that any sanction is warranted, which Dick continues to contest as demonstrated in the Motion to Alter, then deterrence could be achieved with a much smaller amount. An award of $5,000, if sanctions are imposed at all, would be significant for a solo practitioner and would send a clear message. It would be in line with sanctions seen in other cases for comparable situations. By contrast, $166,000 (plus prospective amounts) would be devastating it borders on punitive obliteration of a small firm. The Fifth Circuit in *Whitehead* and *Thomas* both caution against overshooting the mark. *Whitehead* noted that Rule 11 sanctions can range from a reprimand to monetary sanctions, but they must be tailored. *Thomas* listed factors like the offender's ability to pay

and the severity of the violation. 836 F.2d at 878. Here, those factors militate strongly in favor of a reduced sanction if any is imposed. Dick's ability to pay a six-figure sum is questionable (it could bankrupt or severely cripple his practice). The case involved legitimate damage that ASI acknowledged, complex coverage questions, and was resolved at summary judgment without repeated violations or deceit. A scorched-earth sanction is not necessary for deterrence.

ASI's reliance on *Whitehead* is misplaced. In *Whitehead*, the Fifth Circuit approved a sanction that included attorneys' fees and even discussed that deterrence might justify an enhancement in some cases, but it was also careful to say the sanction must not exceed what's needed to deter. 332 F.3d at 802, 808. *Whitehead* doesn't say "always award 100% of fees." It acknowledges the court's discretion. Here, ASI effectively asks for a full fee-shift (100% of its fees). That is an uncommon outcome for Rule 11,- essentially turning it into the fee-shifting provision of a prevailing party statute, which it is not. If Congress or the rules wanted every case to result in full fee reimbursement, Rule 11 would say so explicitly. Instead, Rule 11 gives courts discretion to narrowly tailor sanctions.

In summary, the Court should exercise its discretion to impose a far lower monetary sanction than what ASI seeks, if it imposes any sanction at all. Dick maintains that no sanction is warranted, as argued in the Motion to Alter. But if the Court disagrees and determines some sanction is appropriate, then an amount not exceeding $5,000 would be more than adequate. Five thousand dollars would be a meaningful penalty and would achieve any deterrent purpose. Conversely, a six-figure sanction would be akin to a life sentence for Dick's small firm, which is far beyond what is necessary and would create a

chilling effect that goes well beyond this case. The goal of Rule 11 is deterrence, not ruination.

ASI's argument to justify the full amount overlooks this principle. It may feel aggrieved that it spent money defending what it views as a meritless case, but the Court must balance any deterrence goals with fairness. Sanctions are not meant to provide ASI with a windfall or double recovery. Yet if Dick were made to pay ASI's entire bill (which ASI has already paid to its lawyers), ASI essentially gets a free defense, even a profit if you count that it would recover money it has already budgeted and paid. The Supreme Court in *Blum* warned against "windfalls to attorneys" in fee awards. That concept resonates here: sanctions should not give a winning party more than what is needed to make the point. ASI's counsel has already been compensated by their client; requiring Dick to pay that same bill again (and especially adding amounts not yet billed) hands ASI a large windfall. Any deterrence purpose does not require ASI to come out ahead; it only requires that a message be sent, if warranted. A moderate sanction, if any, accomplishes that without overreaching.

Therefore, Dick urges the Court to substantially reduce the fee award from the requested amount. If the Court determines that some sanction is warranted despite the arguments in Dick's Motion to Alter, an award not exceeding $5,000 would fulfill Rule 11's aims without veering into punitive excess. It would also accord with the Fifth Circuit's guidance to use the least severe sanction adequate and to consider the offender's financial situation. ASI's position, asking for everything including future fees, overshoots what Rule 11 is about. The Court should reject that position.

## VII. Due Process and Equitable Considerations Warrant Limiting Any Fee Award

Finally, ASI addresses Dick's invocation of equitable and due process concerns by noting that Dick had notice of the sanctions request and an opportunity to be heard, which is all due process requires in this context. ASI cites *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994), for the proposition that an "elaborate or formal hearing" is not necessary and that giving the accused party a chance to respond via brief is usually sufficient. Dkt. 99 at 5-6. We do not dispute the general rule from *Childs*: in many sanctions disputes, courts can decide the matter on the papers without an oral hearing, and that satisfies due process. Dick's point, however, was slightly different. It was that fundamental fairness should guide the proceedings, especially when an exceptionally large sanction amount is at issue.

In this case, the magnitude of fees sought by ASI is extraordinary (over $166k). If the Court were inclined to entertain awarding anything close to that, prudence would suggest allowing some form of evidentiary hearing or additional process to test the reasonableness of the fees. For instance, Dick has not had an opportunity to cross-examine Ms. Schexnyder about the necessity of certain tasks or the reasonableness of her rates; the Court has before it only her affidavit. In fee disputes of this size, some courts have held that an evidentiary hearing is appropriate to resolve factual disputes (such as whether certain hours were actually necessary or whether certain work was done). *Childs* acknowledges that while a paper hearing is "usually" all that due process requires, the use of the word "usually" implies that in unusual cases, more process might be due. 29 F.3d at 1027. We suggest this could be such a case if the Court doesn't drastically cut the fee on

the existing record. For example, the Court could order ASI to submit unredacted billing records for in camera review, or convene a short hearing where counsel can be questioned about the billing practices. These steps would ensure confidence in an award if the Court were leaning toward a high number.

Beyond procedural due process, there is an equitable dimension to consider. Sanctions should be fair and not unduly punitive. The Court has broad discretion under Rule 11, but that discretion is guided by equitable factors, including the sanctioned party's intent, history, ability to pay, and the principle of proportionality. Dick urges the Court to weigh these factors. Here, as the Motion to Alter demonstrates, Dick pursued claims based on actual property damage that Wright discovered and that ASI acknowledged resulted from demolition. Dkt. 97. There is no evidence of a pattern of bad behavior or contempt of court orders. If any sanction is warranted, a moderate one would suffice. Additionally, the impact of the sanction on Dick should be considered: a $166k+ award could be ruinous to a small practice, which raises the concern that an excessive sanction might deter not only any alleged misconduct but also chill legitimate advocacy by making attorneys fear catastrophic consequences.

On the other side, ASI is a large insurance company (a Lloyds insurer) for whom $166k is, candidly, a cost of doing business (and likely tax-deductible as an expense). ASI is not a sympathetic victim in need of full restitution via sanctions -- it has already been made whole in the sense that it won the case and avoided any liability to the plaintiff. The equities favor a lower sanction if any is imposed: ASI will be adequately vindicated by any Court finding, whereas Dick would be disproportionately punished by a full fee award. In

equity, a measured approach achieves any legitimate goals; an extreme approach overshoots those goals and becomes punitive.

To be clear, Dick's due process and equitable arguments supplement his primary position that no sanctions are warranted, as demonstrated in the Motion to Alter. The purpose of raising these arguments is to ensure that if the Court disagrees and determines some sanction is appropriate, the process of determining the amount is just. The Court has given Dick a chance to respond to ASI's fee claim (through these objections and reply), which we appreciate. We simply urge that in exercising its discretion on amount, the Court keep in mind fairness and proportionality. Any aim should be to achieve legitimate deterrence if warranted, not to extract every conceivable dollar or to destroy the offender. A tempered award, if any, well below what ASI seeks, would satisfy due process and serve the interests of justice.

## **CONCLUSION**

ASI's response (Dkt. 99) fails to rescue its fee application from fatal flaws. Line by line, ASI has not met its burden under *Hensley*, *Blum*, *Perdue*, and *Delaware Valley*. It provides no solid evidence of prevailing market rates, no detailed itemization that survives scrutiny for reasonableness, and no segregation of fees strictly caused by any sanctionable conduct. Instead, ASI offers a self-serving affidavit and an argument that essentially every expense it ever incurred should be shifted to Dick as punishment. The Court should reject this approach.

As demonstrated in Dick's Motion to Alter, this case involved legitimate coverage disputes arising from actual property damage. Dkt. 97. Wright discovered a "huge hole in the wall" with sunlight streaming through, ASI acknowledged the demolition caused damage, and complex questions existed under Texas's all-risk insurance framework. The Court initially found sanctions unnecessary. These facts demonstrate that sanctions are not warranted.

Dick respectfully requests that the Court sustain his objections in substantial part and drastically reduce the fees, costs, and expenses sought by ASI. In light of Rule 11's deterrence purpose and the many shortcomings in ASI's proof, if the Court determines any sanction is warranted despite the arguments in the Motion to Alter, Dick submits that an award not exceeding $5,000 would be appropriate. This amount would be sufficient to achieve any deterrent purpose without granting ASI an unjust windfall or bankrupting Dick.

Accordingly, Dick asks that the Court modify ASI's Amended Bill of Costs (Dkt. 95) to disallow all unsupported, unreasonable, or excessive components as detailed above and in Exhibit A (Dkt. 96-1), and if it determines any sanction is warranted, enter an award that does not exceed $5,000 in total. Such an award would be firmly grounded in the record, the equities, and controlling law -- achieving any legitimate aims without excess. Dick also prays for any further relief to which he may be justly entitled.

Dated: September 11, 2025.

Respectfully submitted,

/s/ Eric B. Dick
Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Dr.
Houston, TX 77092-8317
(844) 447-3234 Office
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on this day I caused this document to be served on all parties of record via electronic transmission.

/s/Eric Dick
Eric Dick

*Plaintiff's Reply in Support of Objections to Defendant's Amended Bill of Costs*